## PROSECUTION FOR ABORTION.

Circuit Court of Cuyahoga County.

NORMAN M. GEER v. STATE OF OHIO.

Decided, November 1, 1909.

*Abortion—Acquittal on One Count Not a Bar to Second Trial Therein After Reversal of Conviction on Other Count—Reasonable Doubt Defined—Jury Charged to Reason Together.*

1. When an accused has been tried for abortion charged in two counts and found guilty upon one and not guilty upon the other, upon his second trial after reversal of the first judgment, it is not error to admit evidence as to his guilt under the charge as to which he was found not guilty at the first trial.
2. In defining reasonable doubt it is not error to charge the jury that if they would act upon such evidence in the most important affairs of their lives, then it is safe to say that they have been convinced beyond a reasonable doubt.
3. It is not error to refuse to charge that each juror should continue to vote for acquittal, without fear, so long as he is not convicted beyond a reasonable doubt, but to charge them that they should reason together upon the evidence.

*C. L. Selzer* and *G. M. Anderson,* for plaintiff.
*John A. Cline,* contra.

MARVIN. J,; WINCH, J., and HENRY, J., concur.

The plaintiff was indicted under Section 6815 of the Revised Statutes with the crime of having committed abortion upon the person of one Addie Sutter, on about the 15th of July, 1908. The indictment was in two counts, the first charging that the

offense was committed by the use of an instrument (naming it) and the second charging that the offense was committed by the administration of drugs and medicines. The jury returned a verdict as charged in the first count of the indictment and not guilty as charged in the second count. Judgment was entered upon this verdict. Upon proceedings in error prosecuted in this court that judgment was reversed and the case remanded to the court of common pleas for a new trial. Such a new trial was had and the jury again returned a verdict of guilty under the first count and not guilty under the second count, and judgment was entered upon the verdict. The motion for a new trial made by Geer was overruled, and proceedings in error are prosecuted here to reverse that judgment. It is urged on the part of the plaintiff in error that the court erred in admitting evidence tending to establish the guilt of Geer under the second count of the indictment because it is said that the jury having found him not guilty under this count on the former trial, the question of his guilt or innocence under this count is *res adjudicata.* This contention is not sound.

The offense of abortion is defined in one section only, and the manner of procuring abortion all set out in that one section and the case comes, as we think, clearly within the case of *Jarvis* v. *State*, 19 Ohio St., 585. In that case Jarvis was indicted for manslaughter. The indictment contained three counts; the first charged that the crime was committed by throwing a glass tumbler against the head of the deceased; the second charged that the crime was committed by striking the head of the deceased with a tumbler in the hand of the accused, and the third count charged that the crime was committed by striking the head of the deceased with the fist of the accused. On the first trial, the jury found the accused guilty as charged in the third count, and not guilty as charged in the first and second counts. The judgment was reversed and a second trial was had, resulting in a verdict of guilty as charged in the first count, and not guilty as charged in the second and third counts. Judgment was entered upon this verdict and the court upheld the judgment, the court saying this case was controlled by the case of *Lesslie* v. *State*, 18 Ohio St., 391. The first paragraph of the syllabus in that case reads:

"Where an indictment is for but one offense, though charged in several counts, in different ways, and the defendant is convicted upon some of the counts and acquitted upon others, the granting of a new trial upon his motion opens the case for retrial upon the counts on which he was acquitted as well as those for which he was convicted."

The same doctrine is stated in *Bishop's Criminal Law*, Section 998 (8th Edition), which reads:

"Wherever a verdict is rendered and the defendant for any cause moves in arrest of judgment or applies to the court to vacate the judgment already entered, he will be presumed to waive any objection to being put a second time in jeopardy; therefore, ordinarily, he may be tried anew."

It is further urged that the court erred in admitting a catherter in evidence. Before this catherter was offered in evidence it was shown to have been found in the room of Addie Sutter shortly after the offense is said to have been committed. It was shown by the testimony of Dr. Spencer that this instrument is one which could be and sometimes is used for the purpose of procuring an abortion. It is also used for other purposes. This was properly admitted in evidence, for the same reason that if a person were found to be cut or slashed with a knife, and a knife was found shortly after the cutting or slashing in the room where it is charged the cutting or slashing took place, such knife might properly be admitted in evidence.

Again it is urged that there was error on the part of the court in the charge to the jury. One of the complaints made to the charge to the jury is that the court said, if the jury found the accused guilty of having procured an abortion by the use of drugs, the verdict should be guilty under the second count in the indictment. What has already been said shows that there was no error in submitting this question to the jury.

But, it is urged, the court erred in the definition of what constitutes reasonable doubt. It is not claimed that there was not a proper definition of reasonable doubt given, but that in elaborating on this definition the court erred in using this language:

"After applying the same reason and judgment which you would apply to the most important events of your life to the evidence offered in any case, if you feel you are satisfied beyond a reasonable doubt, to a reasonable certainty, so that you would act upon such facts in your own important affairs of life, then it is safe to say that you have been convinced beyond a reasonable doubt. If you would act upon the proof in the most important affairs of your own life, then it would be safe for you to say that the proof has not excluded from your minds a reasonable doubt. Of course, if there is circumstantial evidence, that is, circumstances are to be depended upon to convict of crime, or to prove any fact, it is essential that the circumstances should all look towards the establishment of guilt and be inconsistent with any other inference. So that the circumstances, all taken together, should be consistent with the inferences of guilt, and not consistent with any other inference."

There was no error in any part of this language of the court. Taken together and in connection with what had been said before this in the charge, it was an admirable statement of the rule which should govern the jury in determining whether a reasonable doubt of the guilt of the accused existed. In argument, it was said that what might be a very important and perhaps the most important affair in the life of one of the jurors, might not be thought by another juror to be the most important affair in his life. This is true, and for the very reason that this is true, the language was well calculated to convey to each juror what should constitute a reasonable doubt, or what should convince beyond a reasonable doubt, because under this charge each juror was called upon to apply to himself what to him was the most important affair in his life and say whether in relation to such affair, he would act upon this evidence. It is further urged that the court erred in refusing to give the sixth request made by the counsel for the accused. That request reads:

"The defendant is entitled to the consideration and judgment of every member of the jury on the question of whether or not he is guilty as charged in the indictment; and if any member of the jury is not convinced beyond the existence of a reasonable doubt of the guilt of the defendant as charged in the indictment, it is his duty to vote for the acquittal of the defendant and to continue so to do, without fear, so long as he

is not convinced beyond the existence of a reasonable doubt that the defendant is guilty as charged in either or both of the counts of the indictment.''

In reference to this the court said:

''No. 6 is refused in the language in which it is requested, on the ground that it is misleading. I will say, gentlemen, however, that the defendant is entitled to the consideration and judgment of every member of the jury on the question of his guilt. It is your duty as jurors to consider the evidence as a jury, with the sole end in view of the ascertainment of the question which you are called upon to determine. It is your duty to reason together upon the evidence. It is the duty of each one of you to apply your best reason and judgment, and your best conscience to the evidence, in order that you may discharge the obligation which you have assumed under your oath.''

This language of the court was eminently proper and required of each juror all that the law requires of him, and while the request as made might have been given without error, still as said by the court it might have been misleading. A juror might have felt that he must not listen to or in any wise be influenced by the arguments of his fellow jurors, and if a juror had so understood the instruction he would have felt called upon to do that which the law does not call upon him to do. It is proper that the jury should discuss with one another the evidence, and the effect which the evidence should have upon the mind, and when all this has been done, then of course each juror must act upon his own conscientious conviction. There was no error in refusing to give the sixth request, when such refusal was accompanied by the language used by the court to the jury.

It is further urged that the verdict was not sustained by sufficient evidence, that is, by evidence which should have convinced the jury beyond a reasonable doubt of the guilt of the accused. This contention is not sound. Dr. Burke testified that when he saw Addie Sutter in the hospital, shortly after the offense is charged as having been committed, to the best of his judgment she was suffering from having had an abortion produced upon her. His examination, it is urged, was not as complete as it

should have been, to warrant this opinion. The evidence shows that Dr. Burke is a medical man of extensive experience. He held the office of coroner of this county, and his opinion was entitled to great weight with the jury. Dr. Davis, who saw Addie Sutter while she was in the hospital shortly after this offense is said to have been committed, says that from his examination she was suffering from the effects of an abortion, produced by an instrument. Emma Martin testifies that on Friday, the 17th of July, 1908, she moved into certain rooms in the same building in which Addie Sutter had her living rooms, at which time she saw Addie Sutter apparently well; that on Sunday, the 19th of July, she (Addie Sutter) was in bed not able to get out and sent for a doctor, or rather had Mrs. Martin call a doctor by telephone. Addie Sutter did not give her the name of the doctor to be called, but gave her a telephone number. Ten minutes afterwards Dr. Geer appeared. Mrs. Martin asked him if he was the doctor, and he answered he was, and without her showing him where Addie Sutter's room was or telling him that it was Addie Sutter who wanted him, he went directly to her room. After he had been there some time Mrs. Martin rapped at the door, when the man inside, manifestly Dr. Geer, told her to wait for a few minutes, not to come in then. She did not see the doctor leave, but later she went into the room where she found Addie Sutter in bed and unable to get up.

On the 20th of July L. G. Corlett, a police officer, and others, went to the rooms of Dr. Geer, and there found a foetus wrapped in a newspaper; the newspaper being considerably burned and the foetus burned to some extent. Newspapers were being pulled out of the stove when Corlett went in. Among the newspapers wrapped about this foetus or found there in connection with the same was one out of which a part of a column of the same had been cut; the missing part of that paper was found in Addie Sutter's room. The day-book of Mr. Geer was introduced in evidence. In this book, under date of July 15th, 1908, is found an entry reading "Mrs. Sutter—1539 Chestnut," and then follows some hieroglyphics the meaning of which is unknown to us. But that this indicates that Dr. Geer had in some way come

into relations with Addie Sutter at this time is clear. That the Mrs. Sutter named in the book is Addie Sutter, is manifest from the fact that the number on Chestnut street appearing in this entry, is the place where Addie Sutter was then living. We are not surprised that the jury should have come to the conclusion, beyond a reasonable doubt, that the foetus which was found at Dr. Geer's office was taken from Addie Sutter; that this foetus was induced to be discharged from the body of Addie Sutter by an instrument; that the instrument which was found in her room just afterward was suitable for the purpose, and was the one used, and that Dr. Geer having been there with her on Sunday, the 19th of July, 1908, was the person who used this instrument upon her.

The verdict was abundantly sustained by the evidence and the judgment of the court of common pleas is affirmed.